IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

IN RE:                                      )
                                            )
KELBY DEAN HUTSLER, SR., and                )   Case No. 16-60275
SHERRI ANN HUTSLER,                         )
                                            )
        Debtors.                            )

ORDER SUSTAINING WFO INVESTMENTS, LLC's
OBJECTION TO CONFIRMATION OF PLAN
and
GRANTING WFO INVESTMENTS, LLC's
MOTION FOR RELIEF FROM STAY

WFO Investments, LLC objects to the Chapter 13 Plan filed by Debtors Kelby Dean Hutsler, Sr. and Sherri Ann Hutsler, on the ground that the Plan modifies its secured claim in violation of 11 U.S.C. § 1322(b)(2)'s anti-modification provision regarding residential mortgages. WFO also seeks relief from the automatic stay. For the reasons that follow, WFO's Objection to confirmation will be SUSTAINED and its Motion for Relief from Stay will be GRANTED.

The facts are undisputed. The Debtors filed this bankruptcy case on March 29, 2016. On Schedule A, the Debtors listed real property located at RR72, Box 2907, in Alton, Missouri (the "Property"). On Schedule D, they describe the Property as "2 houses on 36 acres," and list WFO as the mortgageholder.

WFO's claim is based on a carry-back, purchase-money Note dated December 21, 2011, in the amount of $176,750.[1] The Note provides for monthly

---

[1] The Deed of Trust expressly states that the purpose of the Note was a "purchase money loan."

payments of $1,500, and bears interest at 10% per annum. The Note provides for a balloon payment of the outstanding principal and interest on February 10, 2017.

WFO's Note is secured by a single Deed of Trust with a legal description describing the Property as three tracts of land. It is undisputed that the Debtors purchased the Property, totaling approximately 36 acres, in a single transaction for one price. The Debtors' residence is situated on one of the three tracts. A second residence is located on one of the other tracts. One of the Debtors' father resides in that second residence. According to WFO's counsel at hearing, the Property also has some outbuildings, apparently of the type typical of farm property. The Debtor's father does not pay rent to the Debtors, but he farms some of the acreage and supplies some food to the Debtors' family.[2]

The Debtors are in default of the payments under WFO's Note. Their Second Amended Chapter 13 plan proposes to pay WFO $2,900 per month, at 4.55% interest, for 48 months beginning November 8, 2016, with a balloon at the end of the 48-month period.

WFO objects to the treatment of its claim in the Plan, asserting that its claim cannot be modified from the contract terms. It has also filed a motion for relief from stay.[3]

Section 1322(b)(2) of the Bankruptcy Code, known as the anti-modification provision, provides in relevant part that a plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence* . . . ."[4]

---

[2] Schedule I does not show any income attributed to the food supplied by the father. Schedule J shows the Debtors have food expenses of $800 per month. *See* Doc. No. 1 at 47-51.

[3] After the hearing on WFO's objection to confirmation, the Debtors filed a third amended plan; however, they still propose to modify WFO's claim

[4] 11 U.S.C. § 1322(b)(2) (emphasis added).

2

The Eighth Circuit Bankruptcy Appellate Panel has said: "A plain reading [of § 1322(b)(2)] requires that in order for the anti-modification provision to apply, the claim must *both* be secured only by an interest 'in real property' *and further*, that the real property must be the 'debtor's principal residence.'"[5]

The term "debtor's principal residence" is defined in the Bankruptcy Code as:

> (A) . . . a residential structure, including incidental property, without regard to whether that structure if used as the principal residence by the debtor, is attached to real property; and
>
> (B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer if used as the principal residence by the debtor.[6]

In turn, "incidental property" with respect to a debtor's principal residence is defined as:

> (A) property commonly conveyed with a principal residence in the area where the real property is located;
>
> (B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and
>
> (C) all replacements or additions.[7]

There is no dispute here that WFO has a claim which is secured by a security interest "in real property," and that (at least some of) the real property is the

---

[5] *In re Coleman*, 392 B.R. 767, 770 (B.A.P. 8th Cir. 2008) (emphasis in original).

[6] 11 U.S.C. § 101(13A).

[7] 11 U.S.C. § 101(27B).

"Debtors' principal residence." This would seem to satisfy the BAP's plain-reading analysis of the anti-modification provision in *Coleman*.

However, the dispute here involves a situation which was not present in *Coleman*. In that case, the BAP was presented with the narrow question of whether a manufactured home qualified for anti-modification protection under the statute. On that question, the BAP held that the statue is unambiguous and does not prohibit modification of a manufactured home security interest if the manufactured home is not "real property" under state law.[8]

Here, the Debtors assert that since the Deed of Trust encompasses three tracts of land, and their residence is situated on only one of the three tracts, WFO's claim is secured not only by real property that is their principal residence, but additional real property as well. The Debtors also appear to assert that, since the Debtor's father farms part of the land and supplies the Debtors with food, the character of the property is something other than residential. WFO disagrees, and asserts that its claim is secured only by a security interest in real property that is the Debtors' principal residence and, therefore, the Debtors cannot propose a plan which modifies the payment terms or interest rate.

The question of whether a property is protected by the anti-modification provision is relatively straightforward when an entirely separate parcel of real estate, or items of personal property unrelated to the residence (such as a vehicle), also secure the claim, in which case "the anti-modification provision is clearly inapplicable."[9]

---

[8] 392 B.R. at 770-71.

[9] *See* Hon. W. Homer Drake, Jr., Hon. Paul W. Bonapfel, and Adam M. Goodman, *Determination of Whether Claim is Secured Only by Debtor's Principal Residence*, Chapter 13 Practice & Procedure § 5:42 (citations omitted).

4

> But the requirements have generated substantial controversy, divergent approaches, and varying results when the real property in which the debtor resides also has nonresidential characteristics or uses or when the mortgage includes a security interest in items related to the real estate or the loan transaction such as rents, fixtures, appliances, insurance, and escrows for taxes and insurance . . . . Disputes also arise when the character or use at the time of loan origination differs from that at the time of the bankruptcy filing or if other collateral in which the creditor originally took a security interest does not exist at the time of the filing.[10]

"Dozens of courts have wrestled with the issue of whether 11 U.S.C. § 1322(b)(2) prohibits strip-down of a secured claim on a debtor's principal residence, if the real property also hosts commercial activities – whether they be a tailor shop, a trucking business, or a multi-unit home with apartments to let."[11] Indeed, as WFO points out in its Suggestions in Support of its position here, three divergent approaches to this analysis have emerged from the bankruptcy courts for the Western District of New York alone. In one of the most recent of those cases from New York, the Honorable Paul R. Warren summarized the approaches, which fairly represent the majority of case law from around the country, as follows:

First, some courts have adopted a case-by-case fact-finding approach which looks at "the totality of the circumstances to determine whether, at the time of the transaction, the parties predominantly intended to enter into a transaction that was primarily residential or primarily commercial in nature."[12]

---

[10] *Id.*

[11] *In re Brooks*, 550 B.R. 19, 23 (Bankr. W.D. N.Y. 2016). *See also* 8 Collier on Bankruptcy ¶ 1322.06[1][a][ii] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (listing numerous variations of collateral properties' character in this context).

[12] *Id.* (citing *In re Brunson*, 201 B.R. 351 (Bankr. W.D. N.Y. 1996); additional citations omitted).

Other courts have adopted a "bright-line rule" that "the anti-modification protections of § 1322(b)(2) do not apply to real property that is a debtor's principal residence – and also includes rental units – reasoning that by using the word 'is' in the statute ('real property that *is* the debtor's principal residence'), 'Congress *equated* the terms 'real property' and 'principal residence.'"[13] In other words, "for the anti-modification protection to apply, the real property securing the mortgage must be *only* the debtor's principal residence."[14] Section 1322(b)(2) does not apply if the property serves "even in part" as something other than exclusively the debtor's residence.[15]

Finally, under the third approach, courts hold that "the anti-modification protections of § 1322(b)(2) do not apply to a creditor's secured interest, so long as the *only collateral* is a single parcel of real estate, even if – in addition to being the debtor's principal residence – the property serves many purposes or is divided into many units."[16] Under this approach, courts have focused on the word "only" in the statute and found that "only" modifies "secured"; "only" does not modify the phrase "debtor's principal residence."[17] "In other words, as long as the debtor principally resides in *some portion* of the real property, the anti-modification protection under § 1322(b)(2) applies and the mortgage securing the claim cannot be stripped down."[18] Therefore, the test under this approach is three-pronged:

---

[13] *Id.* at 23-24 (citing *In re Kimbell*, 247 B.R. 35 (Bankr. W.D. N.Y. 2000) (quoting *Scarborough v. Chase Manhattan Mortg. Corp.*, 461 F.3d 406, 411 (3rd Cir. 2006)) (emphasis added by the *Brooks* court; additional citations omitted).

[14] *Id.* at 24 (emphasis in original).

[15] *Id.*

[16] *Id.* (citing *In re Macaluso*, 254 B.R. 799 (Bankr. W.D. N.Y. 2000)) (emphasis in original).

[17] *Id.*

[18] *Id.* (emphasis in original; footnote omitted).

"first, the security interest must be in the real property; second the real property must be the only security for the debt; and third, the real property must be the debtor's principal residence."[19]

While acknowledging that there might be some "strange" outcomes under the third approach – *i.e.*, suppose a debtor maintained a small apartment in a large factory -- the *Brooks* Court nevertheless agreed with the third approach, referring to it as the minority, but emerging, view.[20]

The Eighth Circuit has not weighed in as to which approach is best. I need not do so here because, based on the undisputed facts, I conclude that WFO prevails under each of the approaches.

At the outset, the fact that the legal description of the Property on the Deed of Trust contains three "tracts" is not determinative. Many indisputably-single "parcels" of real property have legal descriptions containing multiple "tracts."[21] Rather, one must look at the nature and character of the actual property to determine whether the multiple "tracts" consist of a single parcel.[22]

---

[19] *Id*. at 25 (quoting *Wages v. J.P. Morgan Chase Bank, N.A.* (*In re Wages*), 508 B.R. 161, 167 (B.A.P. 9th Cir. 2014)).

[20] *Id.* at 24 n. 2 ("This Court declines to focus on possible outcomes as a reason to abandon the plain text of the statute. 'Even if the Court does not agree with all the possible outcomes produced by the statutory language, it is Congress, not this Court, that must repair any problems with the Code.'") (quoting *In re Wages*, 508 B.R. 161, 167 (B.A.P. 9th Cir. 2014)).

[21] *Accord In re Snowden*, 546 B.R. 39, 44 (Bankr. E.D. Ky. 2016) ("The fact that a debtor's home sits on a large tract or multiple lots does not automatically lead to a conclusion that the claim is secured by more than just the personal residence."); *In re Frank*, 2014 WL 5395857 (Bankr. E.D. N.C. Oct. 23, 2014) (slip copy) (holding that two lots, originally having two separate addresses, were the debtor's principal residence under § 1322(b)(2)).

[22] *In re Snowden*, 546 B.R. at 45 (holding that, where the debtor owned six contiguous lots, but one in the middle had not been pledged as security for the mortgage, the debtor met his burden of persuasion that the property was not a single parcel subject to the anti-modification provision; "It is clear, therefore, that Lot 19 is an integral part of the entire Mildred Estates Property and its omission prevents a conclusion that the Mortgaged Property is one parcel for purposes of the anti-modification provision.").

However, and focusing on the character of the Property, the Debtors assert that since the Deed of Trust encompasses three tracts of land, and their residence is situated on only one of the three tracts, and another home is situated on another tract, WFO's claim is secured *not only* by real property that is their principal residence, but additional real property as well. And, as stated, the Debtors also appear to assert that, since the Debtor's father farms part of the land and supplies the Debtors with food, the character of the property is something other than residential; *i.e.*, something like a multi-unit rental property.

Although there is some contrary authority,[23] most courts hold that "for purposes of § 1322(b)(2), the critical moment is when the creditor takes a security interest in the collateral" because "[i]t is at that point in time that the underwriting decision is made and it is therefore at that point in time that the lender must know whether the loan it is making may be subject to modification in a Chapter 13 proceeding at some later date."[24] Therefore, courts should "look to the character of the collateral at the time of the mortgage transaction."[25] I agree: The relevant time in determining whether the Debtors' Property is "secured only by a security interest in real property that is [their] principal residence" is when WFO took its security interest.[26] That would be so under each of the three described approaches.

---

[23] *See* 8 Collier on Bankruptcy ¶ 1322.06[1][a] (reporting that some courts have looked to the petition date, based on the notion that a claim is to be determined as of that date, and that § 1322(b)(2) uses the word "is.") (citing *BAC Home Loans Servicing, LP v. Abdelgadir* (*In re Abdelgadir*), 455 B.R. 896 (B.A.P. 9th Cir. 2011); *In re Howard*, 220 B.R. 716, 718 (Bankr. S.D. Ga. 1998)).

[24] *See Scarborough v. Chase Manhattan Mortg. Corp.*, 461 F.3d 406, 412 (3rd Cir. 2006) (citation omitted).

[25] *Id.*

[26] I would note that the relevant time period might differ from the time of the initial transaction if, for example, the parties have mutually agreed to later change the deal, such as by releasing liens on "other collateral" (such as a vehicle).

Although WFO bears the initial burden of proof to show by a preponderance of the evidence that its claim falls within the anti-modification exception of § 1322(b)(2), the Debtors bear the ultimate burden of persuasion that modification is permitted.[27]

> "Preponderance of the evidence" means the greater weight of evidence. It is the evidence which, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If upon any issue in the case, the evidence appears to be equally balanced, or if it cannot be said upon which side it weighs heavier, then the plaintiff has not met his or her burden of proof.[28]

What we know about the transaction and the character of the Property at the time of the mortgage comes solely from the Note and Deed of Trust, and the attorneys' uncontested representations at the hearing. Neither party presented any testimony or photographic evidence concerning the character of the property.

WFO's counsel stated at the hearing that WFO is not a commercial lender; rather, WFO was created by its sole member to hold this one loan (the principal's only loan), which counsel stated was a seller-finance carry-back loan. The Note and Deed of Trust are more condensed than one would see in a typical bank-made loan and do not contain the kind of language typical of a non-residential, commercial loan. Indeed, although a majority of courts have held that a residential mortgage which contains a boilerplate "assignment of rents" clause does not remove that creditor from the class of secured creditors protected by § 1322(b)(2),[29] the Deed of Trust in this case does not even contain an assignment of rents clause.

---

[27] *In re Snowden*, 546 B.R. at 44 (citations omitted).

[28] *Smith v. U.S.*, 726 F.2d 428, 430 (8th Cir. 1984).

[29] *See, e.g.*, *In re Brooks*, 550 B.R. at 25-26. *See also In re Marenaro*, 217 B.R. 358 (B.A.P. 1st Cir. 1998) (holding that boilerplate language granting a lien in all easements, rights,

Furthermore, at the hearing, the attorneys agreed that the tracts are contiguous and were purchased as one unit from a single seller. There was no evidence that the tracts are taxed separately, and the Debtors identified the Property with one single address on their schedules. They list no farm income; rather, their income comes from employment and an adoption subsidy. In addition, there was no evidence that a formal agreement exists between the Debtors and the father concerning their arrangement. Furthermore, there was no evidence, or even suggestion, that the Debtors intended at the time of the transaction to commercially farm, or rent out a part of the property in a commercial manner, or to divide the tracts. "If an abstract potential to use property in a different way, never amounting to a gleam in the eye of the owner at the time that the mortgage is given, can withhold the protection of the anti-modification language from a mortgage, then virtually every mortgage would be subject to modification."[30] I find, based on the loan documents and the parties' representations, that the Property is one single family-farm type of property, which is not used, or planned to be used, in any form of commercial manner or to produce income.

So, under the "case-by-case fact-finding" approach, there is no evidence, or even any indication by the Debtors, that at the time of the transaction, the parties "predominantly intended" to enter into a transaction that was anything other than residential in nature. WFO, therefore, prevails under the first approach.

Under the third minority-but-emerging approach, WFO prevails because the Debtors concede that they principally reside on *some portion* of the contiguous Property. Thus, the three-pronged test is satisfied: WFO's security interest is in

---

appurtenances, rents, royalties, mineral, oil, and gas rights and profits, water rights, and stock, and all the fixtures now or hereafter a part of the property).

[30] *In re Marenaro*, 217 B.R. at 360-61.

real property; the Property is the only security for the debt; and the real Property is the Debtor's principal residence.

Finally, under the second approach, § 1322(b)(2) does not apply if the property serves "even in part" as something other than exclusively the debtor's residence. Of the three approaches, this one leans most heavily in favor of the Debtors because of the fact that the Debtor's father lives there, farms the land, and supplies the family with food. However, the Debtors presented no evidence that the food supplied by the father is "rent" in any commercial sense, or that the father farms the property in a commercial manner, or that the Property is used as anything other than a family community all contributing to the common good. Based on those facts, as well as the loan documents, I find it "more probably true and accurate" that the parties considered the loan, and the Property, to be residential, and not commercial, in nature. WFO has, therefore, met its burden of showing, by a preponderance of the evidence, that the character of the Property at the time of the transaction was residential and that the Debtors failed in the ultimate burden of persuasion that the loan may be modified under § 1322(b)(2).

Therefore, because I find that WFO's claim is "secured only by a security interest in real property that is the debtor's principal residence" under § 1322(b)(2), the Debtors may not propose to modify WFO's rights under the loan documents. WFO's objection to confirmation will, therefore, be sustained.

As stated, WFO also filed a Motion for Relief from Stay with regard to the Property. At the hearing, Debtors' counsel stated that, if modification were not permitted, the Debtors did not oppose the lifting of the automatic stay.

ACCORDINGLY, WFO Investments, LLC's Objection to Confirmation is SUSTAINED. WFO Investments, LLC's Motion for Relief from Stay is GRANTED; however, WFO's request that the Chapter 13 Trustee abandon the

Property is DENIED.  Debtors are ORDERED to file an amended plan within 21 days.

      IT IS SO ORDERED.

                                              /s/ Arthur B. Federman
                                                  Bankruptcy Judge

Dated: 12/19/2016

**The moving party is to serve this order on parties not receiving electronic notice but entitled to notice pursuant to Fed. R. Bankr. P. 2002, Local Rule 2002-1 and other applicable law.**